# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| L. KRISTEN BULLARD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDEX FREIGHT, INC., )<br>)<br>Defendant. ) | NO. 3:15-cv-00905<br>JUDGE CRENSHAW |

## MEMORANDUM OPINION

L. Kristen Bullard brings this action against her former employer, FedEx Freight, Inc. (hereinafter "FedEx"), after it terminated her employment for excessive absences and tardiness. (Doc. No. 10.) She alleges that FedEx violated the Family Leave and Medical Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Tennessee state law when it terminated her employment. (Id.) Before the Court is FedEx's Motion for Summary Judgment. (Doc. No. 34.) In response to FedEx's motion, Bullard voluntarily dismissed her state law claims. (Doc. No. 47 at 2 n.1.) For the following reasons, FedEx's motion is **GRANTED IN PART and DENIED IN PART**.

I.     UNDISPUTED FACTS

In 2004, FedEx hired Bullard as a supplemental field office employee. (Doc. No. 46 at 1.) As part of a company-wide realignment, FedEx rehired Bullard on January 1, 2011, as an Administrative Assistant-Senior Manager. (Id.) When FedEx hired Bullard, she signed an offer letter and an accompanying "Conditions of Employment" document, stating: "To the extent the law allows an employee to bring legal action against the Company, I agree to bring the complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my

lawsuit, whichever expires first." (Id. at 1-2.) It gave FedEx "the absolute unfettered right to change its policies, rules, regulations, and procedures unilaterally, at any time, without prior notice." (Id. at 2.)

A. Background

In 2007, FedEx first approved Bullard's request for intermittent FMLA leave. (Id. at 4.) Bullard has lupus dermatomyositis, which can cause her to have a rash, muscle stiffness, weakness, and pain on any given day. (Doc. No. 51 at 1.) When her symptoms flare up, she has more pain, moves slower, and sometimes cannot walk. (Id.) It may take her two hours to do something that would otherwise take twenty minutes. (Id.) For much of Bullard's employment, her start time was 7:00 a.m., but she claims FedEx gave her a fifteen-to-thirty minute window to clock-in as an informal accommodation for her disability. (Doc. No. 51 at 2.) In late-2013/early-2014, FedEx changed Bullard's start time to 7:30 a.m., which Bullard understood was to accommodate her disability. (Id.)

FedEx has a written attendance policy, as well as an unwritten customary call-in procedure. (Doc. No. 46 at 5; Doc. No. 51 at 6-7.) The Attendance Policy states that an employee is late if she is more than three minutes late to her scheduled shift. (Doc. No. 46 at 5.) It requires an employee who will be late to notify her supervisor within thirty minutes of her scheduled start time. (Doc. No. 51 at 6-7.) FedEx's call-in procedure requires an employee to provide notice of a tardy or absence two hours before her scheduled start time, via telephone. (Doc. No. 46 at 5.) FedEx counseled Bullard on the call-in procedure. (Id.)

Under the Attendance policy, every time the employee is absent, FedEx assigns her one attendance point. (Doc. No. 41-1 at 2-3.) For every tardy, the employee is assigned 0.5 attendance points. (Id.) After five attendance points within a rolling 180-day calendar-day period, the

2

employee is placed on ninety days of probation. (Id. at 4.) Any points assigned to an employee during her probationary period would lead to that employee's discharge. (Id.) Approved absences due to FMLA do not count toward FedEx's disciplinary process as long as the employee submits proper documentation and gives notice "within a reasonable time prior to" the employee's start time, "or as soon as practical." (Doc. No. 46 at 6-7.) "Practicability should be based upon circumstances related to the FMLA need." (Id. at 7.)

From 2004 until 2007, FedEx issued nine Corrective Action Forms to Bullard because of her unexcused tardies and/or absences. (Id.) Between February 2007 and October 2013, District Manager Frank Center was "overly lenient" in handling Bullard's FMLA requests, and Bullard did not receive any corrective actions. (Id.) For example, Center had allowed Bullard to use FMLA to cover tardy incidents related to her lack of child care, which was not covered under the FMLA. (Doc. No. 51 at 11.) After Center passed away, Tommy Jackson, the Fleet District Manager, began tracking Bullard's time, and issued her nine corrective actions, eventually leading to her termination in December 2014. (Doc. No. 46 at 8.) When Jackson took over, he and Charles Elkins, the Senior Manager of Regional Fleet Maintenance, discussed Bullard's attendance issues with Human Resources. (Id.) They then discussed FedEx's policies on attendance and the FMLA with Bullard, and informed her that they would adhere to those policies moving forward. (Id.)

On March 27, 2014, Elkins discovered that Bullard did not have a start time in the system for the day. (Id. at 8.) Bullard told Elkins that she scanned in, but she was unsure if the machine was working. (Id. at 9.) Bullard turned in a Kronos Edit Form, estimating that she started her shift at 7:32 a.m. (Id.) However, FedEx's video camera showed that Bullard did not enter the building until 7:38 a.m. (Id.) As a result of the misinformation on Bullard's Kronos Edit Form, FedEx terminated Bullard's employment for falsifying her Kronos Edit Form. (Id.) Bullard appealed her

3

termination, asserting that Jackson had only asked her to estimate her clock-in time when filling out a Kronos Edit Form on a prior occasion. (Id.) FedEx reinstated Bullard's employment. (Id. at 10.)

B. The Alleged-FMLA Violations

During the next few months, Bullard received multiple Corrective Actions for attendance reasons. (Id. at 10.) On July 17, 2014, Bullard was late because she was in a substantial amount of pain. (Doc. No. 51 at 13.) She requested that FMLA time cover this absence in an email dated October 1, 2014. (Doc. No. 37-2 at 13.)

On August 6, 2014, Bullard received a Corrective Action for allegedly clocking in late, and warned Bullard that any future "attendance points," accumulated for tardiness or absences, would result in FedEx placing Bullard on probation.[1] (Doc. No. 46 at 11.) That day, Elkins and Christina Wilson, the Employee Relations Advisor for the Nashville District of FedEx, met with Bullard and informed her that her FMLA certification no longer covered episodic incapacities, such as tardiness. (Doc. No. 46 at 11.) Bullard had used the same certification for years and it had always covered episodic incapacities. (Id.) They provided Bullard new paperwork, which Bullard completed. (Doc. No. 51 at 14.) On August 11, 2014, FedEx approved Bullard's FMLA certification for episodic incapacity for flare ups estimated at three times per month. (Id.) However, Elkins and Wilson told Bullard that she would still have to give proper notice under the call-in procedure. (Doc. No. 46 at 12.) Bullard stated that she could not comply with the two hour notice procedure, so FedEx agreed to amend the call-in procedure to one hour prior to the start time. (Id.)

---

[1] Bullard disputes that she clocked in late that day because she claims FedEx does not provide any proof of the time she clocked in. (Doc. No. 46 at 11.) Elkins' signed declaration and the written corrective action both are proof of the time Bullard clocked in. (Doc. No. 42 at 3; Doc. No. 37-1 at 36.) Bullard provides no proof that this is incorrect, so the Court finds that it is undisputed.

4

On August 19, 2014, Bullard called Elkins from the side of the road at 6:56 a.m. stating that she was going to be late because she was having a flare-up. (Id. at 14.) Bullard was in a lot of pain in the morning, but hoped it would subside. (Id. at 15.) Because Bullard did not call one hour in advance of her start time, FedEx assessed a tardy and placed her on leave without pay for exceeding the allowable number of attendance points. (Id.)

C. The Investigation

On September 9, 2014, Bullard sent Wilson an email requesting a reasonable accommodation of schedule flexibility. (Doc. No. 46 at 16.) Wilson noted that on numerous occasions, her manager had offered to let her move her start time to later in the morning, which Bullard declined because she needed to sync her work schedule with her child care needs. (Id.) Bullard admitted that she did not want to modify her start time, but instead wanted FedEx to give her flexibility in the time she had to clock-in when her symptoms flared up. (Id.)

On October 3, 2014, Jackson spoke with Bullard on the phone. (Doc. No. 40-14 at 1.) She told Bullard that her previously-marked unexcused tardies from July 17 and August 19 would be counted as FMLA time. (Id.) However, because Bullard did not follow the call-in procedure, FedEx did not remove those attendance points, and Bullard was still on leave without pay. (Id.) She stated that Bullard's September 9 request for schedule flexibility was still pending, and after a determination of that request, FedEx will decide whether to remove her attendance points from July 17 and August 19 and reinstate her. (Id.)

On October 14, 2014, Pullen and Bullard spoke by phone and offered to reinstate her employment. (Doc. No. 37-1 at 16.) Bullard declined because of stress. (Id. at 17.) It is disputed, and neither party provides any evidence, as to whether FedEx asked Bullard to turn in medical

5

certification regarding her stress, or whether the stress was related to Bullard's previous certification. (Id. at 17-18.)

On October 15, 2014, Bullard submitted a Reasonable Accommodation Review form to FedEx's Reasonable Accommodation Review Committee. (Id. at 18.) Bullard restated her September 9 request that FedEx not hold her to the three minute clock-in rule on days when her condition flares up, provided that she still works eight hours from the time she clocks in. (Id.) Bullard testified that this was essentially the same "lenient" standard her previous manager, Center, provided her. (Id.)

On December 3, 2014, the Reasonable Accommodation Review Committee decided that FedEx could not grant Bullard's reasonable accommodation request. (Id. at 19.) It did not state why it could not grant Bullard's reasonable accommodation request, but presumably it determined that, under the Attendance Policy, attendance was an essential part of Bullard's job function on which FedEx could not be lenient. (Doc. No. 46 at 5.) FedEx terminated Bullard's employment effective the next day because of her accumulated attendance points. (Id.) Had the reasonable accommodation request been granted, FedEx would have removed Bullard's attendance points from July 17 and August 19, and it would have reinstated Bullard's employment. (Doc. No. 51 at 22.)

FedEx did not immediately replace Bullard because it had a hiring freeze, and Bullard's duties were absorbed by two other senior administrators. (Id.) In June or July 2016, FedEx offered Bullard's former job to another person. (Id. at 22-23.)

II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving

6

party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014)).

III. ANALYSIS

The Amended Complaint raises five federal claims: (1) interference with her FMLA rights; (2) retaliation for using FMLA leave; (3) discrimination under the ADA; (4) failure to accommodate under the ADA; and (5) retaliation under the ADA. (Doc. No. 10.) FedEx moves for summary judgment on all claims.

A. FMLA

FedEx argues that it is entitled to summary judgment on Bullard's FMLA claims because (1) Bullard brought the case after the six-month contractual limitations period expired, and (2) Bullard cannot establish a prima facie case on either claim. (Doc. No. 35 at 11, 28.)

*1. Contractual Limitations Period*

FedEx argues that Bullard's FMLA claims violate the contractual statute of limitations that Bullard bring any legal action within six months of the date of the event forming her lawsuit. (Doc. No. 35 at 11.) Bullard contends that the contractual limitations period interferes with her right to sue under the FMLA, which violates the statute. (Doc. No. 47 at 12.)

Both sides agree that this is a matter of first impression within this District. FedEx cites two district courts and the State of Tennessee that agree with its position.[2] Badgett v. Federal Express Corp., 378 F. Supp. 2d 613, 625 (M.D.N.C. 2005); Fink v. Guardsmark, LLC, No. CV 03-1480-BR, 2004 WL 1857114, at *3-4 (D. Ore. Aug. 19, 2004). These cases reason that the

---

[2] The State of Tennessee applies the contractual limitations period on its comparable Tennessee Human Rights Act. Hill v. Home Ins. Co., 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938).

statute of limitations is not a "right" given to employees, but instead a procedural protection to the employers, so there is no prohibition in the FMLA to the contractual limitations clause. Id. On the other side, Bullard cites four district courts that agree with its position. E.g., Plitsas v. Federal Exp., Inc., No. 07-5437, 2010 WL 1644056, at *6 (D.N.J. Apr. 22, 2010); Grosso v. Federal Exp. Corp., 467 F. Supp. 2d 449, 457 (E.D. Penn. 2006); Conway v. Stryker Medical Div., No. 4:05-cv-40, 2006 WL 1008670, at *1 (W.D. Mich. Apr. 18, 2006); Lewis v. Harper Hosp., 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002). These cases conclude, as the Court does, that the FMLA gives employees a right to sue, and the contractual limitations period unlawfully interferes with that right. Id.

As with any matter of first impression, the Court starts with the words in the statute. The FMLA prohibits employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (2006). Under the subchapter, Congress has given the employee has a right to sue his or her employer in federal court for violating § 2615. 29 U.S.C. § 2617(a)(2) (2008). The right to sue "may be brought . . . no later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." Id. at (c)(1). Congress then declared: "Employees cannot waive, nor may employers induce employees to waive, their rights under the FMLA." 29 C.F.R. § 936.220(d).

Based on the plain language of the statute, an employer cannot interfere with an employee's right to sue. The relevant right is the right to sue under the FMLA for a period of two years. FedEx advances that the FMLA limitations period "exist[s] for the protection of defendants." (Doc. No. 35 at 11 (citing Garden City Osteopathic Hosp. v. Hbe Corp., 55 F.3d 1126, 1135 (6th Cir. 1995))). FedEx then reasons that it is not a right afforded to employees, but instead is a protection afforded to employers. FedEx is attempting to expand the FMLA limitations protection afforded to itself,

thereby limiting the right afforded to its employees under § 2617. This is impermissible under § 2615. Therefore, the Court finds that the contractual limitations period does not apply, but instead the statutory limitations period.

This decision joins the other district courts within the Sixth Circuit that have considered this issue. E.g., Conway, 2006 WL 108670, at *1-2; Harper Hosp., 241 F. Supp. 2d at 772-73. FedEx, along with the cases it cites, makes the mistake in defining the right as the defendant's right to be sued within a reasonable period. (Doc. No. 35 at 11 (and cited cases)). Tellingly, every time FedEx discusses the right at issue, it discusses the limitations period. (See id. at 11-12 ("By its express terms, this provision only protects employees' 'rights' under the statute.") ("[L]imitations periods are procedural in nature.")). However, the relevant right is the plaintiff's right to sue, not the defendant's right to be sued within a reasonable period. See 29 U.S.C. § 2915 (prohibiting employers from interfering with employees' rights, including the right to sue). An employer cannot limit the plaintiff's right to sue more than the statute does, and the Court denies summary judgment on that basis.

2. *FMLA Interference*

FedEx argues that it is entitled to summary judgment on Bullard's FMLA interference claim because (1) Bullard was not an eligible employee under the FMLA, and (2) FedEx did not deny Bullard FMLA benefits to which she was entitled. (Doc. No. 35 at 27-28.)

To establish a prima facie case of FMLA interference, an employee must show that "(1) [s]he was an eligible employee; (2) the defendant was a covered employer under the FMLA; (3) [s]he was entitled to take leave under the FMLA; (4) [s]he notified [her] employer of [her] intent to take leave; and (5) the employer denied [her] benefits or rights to which [s]he was entitled under

9

the FMLA." Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 427 (6th Cir. 2014) (citing Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006)).

The FMLA statute defines the term "eligible employee" as an employee "who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A) (2009). FedEx does not argue that Bullard is not eligible under the FMLA statute, but instead argues that she is not eligible because she seeks a permanent periodic intermittent leave not covered under the FMLA based on an unreported Iowa Court of Appeals case. (Doc. No. 35 at 27 (quoting Hayes v. Vermeer Mfg. Co., 817 N.W.2d 495, at *8 (Iowa Ct. App. 2012) ("Decisions Without Published Opinions")). The Court is not persuaded to follow the Iowa case over the federal statute. Further, the Iowa court in fact found the plaintiff eligible under the FMLA, but found the plaintiff's FMLA certification "facially invalid."[3] Id. at *6-8. Here, FedEx does not argue that Bullard is not eligible under the definition in the FMLA statute, so the Court denies FedEx summary judgment on this ground.

FedEx next argues that it did not deny Bullard any FMLA rights to which she was entitled. Bullard argues that she was disciplined for the timeliness of her notification that she would be late even though she informed FedEx "as soon as practicable," in accordance with FedEx's FMLA procedures, which show that this is an issue of disputed material fact best left for a jury. (Doc. No. 47 at 16-17.) Importantly, FedEx granted Bullard's FMLA request for both the July 17 and August 19 FMLA requests, which proves that these absences were eligible for FMLA time. It is true that

---

[3] The Iowa court found that the plaintiff's certification was facially invalid because it allowed him to "take unscheduled leave at a moment's notice for the rest of [his] life." Id. at *8. It held that, under the specific circumstances, the plaintiff could not perform his essential job function of reliable attendance. Id. at *8-9. This is different than Bullard's request, as she was only asking for a periodic fifteen-to-thirty minute start time window, which FedEx already gave her—albeit informally—for years.

absent unusual circumstances, an employer may "condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements . . . ." Srouder v. Dana Light Axle Mfg., LLC, 725 F.3d 608, 614-15 (6th Cir. 2013) (citing 29 C.F.R. § 825.302(d)). FedEx does not provide any evidence as to whether Bullard called in on July 17, and it is not disputed that Bullard was unable to call in earlier on August 19 because she had a flare up in the car. Taking the evidence in the light most favorable to Bullard, she has established a prima facie case of FMLA interference.

   3. *FMLA Retaliation*

FedEx argues it is entitled to summary judgment on Bullard's FMLA retaliation claim because (1) Bullard is not an eligible employee, and (2) Bullard cannot prove that FedEx's legitimate, nonretaliatory reason for firing her was pretextual. The Court denies summary judgment on FedEx's first argument for the reasons set forth in the previous section. As that is the only argument that Bullard could not prove a prima facie case, the Court finds that Bullard can prove a prima facie case.

After an employee proves a prima facie case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions. Demyanovich, 747 F.3d at 427, 433 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). The burden then shifts back to the employee to prove that the employer's legitimate, non-retaliatory reason is pretextual. Id. at 433.

FedEx claims that it terminated Bullard's employment because of her tardiness and failure to utilize the correct call-in procedure. Bullard can prove that FedEx's reasons are pretextual if they "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to

11

warrant the action." Id. at 431 (quoting Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012)).

Bullard attempts to show pretext by showing (1) inconsistency in the application of Bullard's FMLA from 2013 to 2014; (2) Bullard took multiple days of FMLA in 2014, and each were followed by write-ups related to attendance; and (3) FedEx had no complaints about Bullard's job performance. (Doc. No. 47 at 19.) In its reply brief, FedEx only states that it was not pretext because Bullard did not follow the call-in procedure. (Doc. No. 50 at 5.) For the reasons given by Bullard, there are issues of material fact as to whether FedEx's proffered reason actually motivated its action. FedEx found that Bullard's time qualified for FMLA time and yet strictly held her to the call-in procedure despite the evidence that calling in an hour prior to her start time was not practicable. The Court denies summary judgment on this claim.

B. ADA

Bullard asserts three claims under the ADA: (1) disability discrimination; (2) failure to accommodate; and (3) retaliation for proposing a reasonable accommodation. (Doc. No. 47 at 20.)

*1. Disability Discrimination*

FedEx argues that it is entitled to summary judgment on Bullard's disability discrimination claim because (1) Bullard cannot established that she was otherwise qualified for her position and (2) Bullard did not suffer an adverse employment action because of her disability. (Doc. No. 35 at 13-17.) Bullard claims she was otherwise qualified with the reasonable accommodation of a flexible start time, and she was fired because FedEx did not approve her reasonable accommodation request. (Doc. No. 47 at 20-23.)

"To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he or she is disabled,

12

(2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." Ferrari, 826 F.3d at 894 (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996) (overruled on other grounds)). The fifth element "may also be satisfied by showing that similarly situated non-protected employees were treated more fairly." Jones v. Potter, 488 F.3d 397, 404 (6th Cir. 2007) (quoting Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995) (overruled on other grounds)).

There is ample evidence to support Bullard's contention that she is otherwise qualified for her position with a reasonable accommodation of flex start time. Primarily, FedEx never had any complaints about Bullard's job performance even when she had the "overly lenient" clock-in time when Center was her manager, which is the equivalent of the reasonable accommodation she requested. Because there is a dispute of a material fact as to whether Bullard was otherwise qualified with a reasonable accommodation, the Court denies summary judgment on this claim.

FedEx next claims that Bullard must prove that she suffered an adverse employment action "due to" her disability. (Doc. No. 35 at 15.) Bullard is using indirect evidence to prove the disability discrimination claim, and FedEx does not show what element of Bullard's prima facie case she cannot prove. Bullard suffered an adverse employment action because FedEx terminated her. FedEx at least should have known about Bullard's impairment because Bullard presented the FMLA paperwork and certification. Last, Bullard was replaced after FedEx lifted the hiring freeze. Bullard can establish a prima facie case, and summary judgment on her disability discrimination claim is denied.

    2. *Failure to Accommodate*

FedEx asserts that it is entitled to summary judgment on Bullard's failure to accommodate claim because (1) Bullard cannot establish that she was qualified for her position and (2) Bullard's accommodation request was not reasonable. (Doc. No. 35 at 19-22.) Bullard contends that her accommodation request is reasonable. (Doc. No. 47 at 23-24.)

To prove a prima facie failure to accommodate claim, a plaintiff must prove: (1) she was disabled; (2) she was reasonably qualified for the position, with or without a reasonable accommodation; (3) the employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. Deister v. Auto Club Ins. Ass'n, 647 Fed. Appx. 652, 657 (6th Cir. 2016) (citing Johnson v. Cleveland City Sch. Dist., 443 Fed. Appx. 974, 982-83 (6th Cir. 2011)). As stated in the disability discrimination claim, FedEx is not entitled to summary judgment on the first three elements.

Here, there is a disputed issue of material fact as to whether Bullard requested a reasonable accommodation. "Generally, an ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable.'" Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 870 (6th Cir. 2007). Bullard met her burden by twice submitting a reasonable accommodation request for flexible start time. FedEx claims it is not reasonable because "[p]untuality and attendance were essential functions of Bullard's job." (Doc. No. 35 at 21.) However, FedEx bears the burden of proving that certain job criterion are essential, or "that a proposed accommodation will impose an undue hardship upon [it]." Kleiber, 485 F.3d at 869 (quoting Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004)). There are multiple disputed facts that preclude summary judgment on this issue. Bullard had a flexible start time when her manager was "overly lenient" and there is no evidence it affected her job

performance. When FedEx stopped allowing Bullard to clock-in late, it still did not receive any complaints on Bullard's job performance. FedEx offered to allow Bullard to start later, a reasonable inference of which is that she could perform her tasks later in the morning. There is also a dispute as to whether the two people who absorbed Bullard's job duties were required to do Bullard's job duties in the same timeliness that FedEx asserts is essential for the company. (Doc. No. 51 at 16-17.) Based on these facts, the Court finds that it is disputed whether Bullard's requested accommodation would impose an undue hardship upon it.

   *3. Retaliation*

FedEx argues that it is entitled to summary judgment on Bullard's ADA retaliation claim because Bullard cannot prove that her reasonable accommodation request was the "but for" cause of her termination. (Doc. No. 35 at 25-26.) Bullard does not respond to this argument, but rather asserts vaguely that a reasonable fact finder could determine she was denied accommodation and terminated in retaliation for her complaints about the way she was treated because of her disability. (Doc. No. 47 at 25.)

To prove an ADA retaliation claim, the plaintiff must initially prove her prima facie case that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing A.C. v. Shelby Cnty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013)).

Here, Bullard does not even mention a causal connection between her protected activity and the adverse action. Therefore, the Court grants FedEx summary judgment on this claim.

15

IV. CONCLUSION

For the foregoing reasons, FedEx's motion for summary judgment (Doc. No. 34) is **GRANTED IN PART** with respect to Bullard's ADA retaliation claim, and **DENIED IN PART** in all other respects.

The Court will issue an accompanying order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE